U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 DEC 23 PM 2:39

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BERKLEY INSURANCE COMPANY,        )
                                  )
   Plaintiff,                     )
                                  )
   v.                             )    Case No. 2:20-cv-00009
                                  )
DAVID R. BOUCHARD, Individually;  )
MEAGHAN L. BOUCHARD, Individually;)
and REBECCA L. BOUCHARD,          )
Individually,                     )
                                  )
   Defendants.                    )

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**
(Doc. 19)

Plaintiff Berkley Insurance Company brings this action against Defendants David R. Bouchard ("Mr. Bouchard"), Meaghan L. Bouchard, and Rebecca L. Bouchard (collectively, the "Bouchard Daughters") alleging that Mr. Bouchard fraudulently transferred property located in Vermont to the Bouchard Daughters. Plaintiff asserts causes of action for indemnity (Count I) and specific performance (Count II) against Mr. Bouchard, and for intentional and constructive fraudulent transfer pursuant to the Vermont Fraudulent Transfer Act (the "VFTA"), 9 V.S.A. §§ 2288, 2289, (Count III) against all three Defendants.

Pending before the court is Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and failure to join an indispensable party pursuant to Fed. R. Civ. P. 12(b)(7). On May 15, 2020 Plaintiff opposed Defendants' motion to dismiss, and on May 29, 2020 Defendants replied. Plaintiff filed a sur-reply on June 23, 2020 at which time the court took the pending motion under advisement.

Plaintiff is represented by Adam G. Gutbezahl, Esq., Kevin J. O'Connor, Esq., and Ryan M. Long, Esq. Defendants are represented by Andrew B. Delaney, Esq., and Jenny Louise Proulx, Esq.

I. **Allegations in the Complaint.**

Plaintiff is a Delaware corporation with a principal place of business in Greenwich, Connecticut. Mr. Bouchard is the Director, President, and Resident Agent of Bouchard Painting Inc. ("Bouchard Painting") and a resident of Derry, New Hampshire. The Bouchard Daughters are both residents of Derry, New Hampshire. Plaintiff alleges that the court has subject matter jurisdiction based on diversity of citizenship and venue is proper because the real property at issue is within the District of Vermont.

On May 4, 2011, Plaintiff; Bouchard Painting; Mr. Bouchard; and his late wife, Cathy A. Bouchard, entered into a General Agreement of Indemnity (the "Indemnity Agreement") as part of Plaintiff's agreement to provide surety credit to Bouchard Painting. (Doc. 1 at 3, ¶ 13.) The Agreement states that "its construction, validity, performance and all rights, obligations and liabilities arising hereunder shall be governed, construed and enforced in accordance with the laws of the State of New York[.]" (Doc. 1-1 at 7.) In relevant part, the Indemnity Agreement provides that:

> [Mr. Bouchard], jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified [Berkley] from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim[,] expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse [Berkley] for any payment by it, related to or by reason of: (i) this Agreement, a Contract of Bonds and/or [Berkley]'s procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by [Berkley] . . . or (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by [Berkley.]

(Doc. 1 at 3-4, ¶ 14.) The Indemnity Agreement defines an "Event of Default" as:

2

> (i) the inaccuracy of any representation, warranty or other information made or provided by [Mr. Bouchard] in this Agreement or any applications or other materials submitted to [Plaintiff] in connection herewith or with any Contract or Bond; or (ii) the failure, delay or inability of [Mr. Bouchard] to fully perform or observe any term, covenant or condition of this Agreement, or of a Contract or Bonds, whether actual or alleged; or (iii) the failure, delay or inability of [Mr. Bouchard] to promptly and fully pay when due any Indemnified Claim or Expense, or any interest therein, arising in connection with the performance of a Contract; or (iv) the alleged or actual failure to diligently prosecute the work under any Contract . . . or (xii) a declaration of default by an Obligee under any Contract or Bonds[.]

(Doc. 1-1 at 3.) It further states that:

> [Mr. Bouchard] agrees that upon the occurrence of an Event of Default: (i) [Plaintiff] may, in its sole discretion, and at any time and from time to time, demand payment of all obligations hereunder; . . . [and] (iii) to take possession of and to secure the benefit of any and all collateral[.]

*Id.* at 4.

Plaintiff alleges that between 2003 and 2014, Mr. Bouchard purchased three properties located in Brighton, Vermont (collectively, the "Vermont Property"), but failed to identify these properties on the personal financial statements he submitted to Plaintiff. (Doc. 1 at 5-6, ¶¶ 18-24.) On March 14, 2016 Plaintiff, as surety, issued a bond for Bouchard Painting, as principal, in favor of Walsh Construction Company ("Walsh") guaranteeing Bouchard Painting's performance of its work under a written subcontract with respect to a wastewater treatment plant located in Grafton, Massachusetts (the "Project"). *Id.* at 6, ¶ 25. Beginning in June 2018, Plaintiff received claims from Walsh that Bouchard Painting was in default of its obligations at the Project, and Walsh subsequently engaged a new painting contractor. *Id.* at 6-7, ¶¶ 28-29. Plaintiff later received communication from Walsh indicating that it would demand reimbursement for alleged defects in Bouchard Painting's work on the Project. *Id.* at 7, ¶ 31.

On October 17, 2018 Plaintiff forwarded the communication from Walsh (the "Walsh claim") to Mr. Bouchard via email. Two days later, Mr. Bouchard transferred the Vermont Property to the Bouchard Daughters. *Id.* at 7, ¶ 32. At a meeting regarding the Walsh claim, Plaintiff claims that Mr. Bouchard indicated that neither he nor Bouchard

3

Painting "had the ability to post collateral" and that the Vermont Property had been sold to "an LLC[.]" *Id.* at 8, ¶ 36. Plaintiff investigated Mr. Bouchard's assets and discovered that the Vermont Property allegedly had a combined value of $292,000 and that it was transferred to the Bouchard Daughters for $3.00. (Doc. 1 at 8-9, ¶¶ 37-43.)

Plaintiff issued a demand to Mr. Bouchard for collateral pursuant to the Indemnity Agreement in the amount of $605,128.36 on November 12, 2019. *Id.* at 9, ¶ 44. Mr. Bouchard allegedly indicated that he was unable to post the requested collateral. *Id.* at 9, ¶ 45. Plaintiff asserts that based on Mr. Bouchard's financial statements and disclosures after the transfer of the Vermont Property, Mr. Bouchard's net worth was $181,500, but that Mr. Bouchard had inflated his net worth on these documents by falsely stating that he owned property located at 1 Corporate Park Drive in Derry, New Hampshire (the "Derry Property"). Plaintiff contends that the Derry Property is owned by DB Trailside Properties, LLC, not Mr. Bouchard. Accounting for the value of assets and liabilities listed on Mr. Bouchard's financial statements as connected to the Derry Property, Plaintiff alleges that Mr. Bouchard's net worth is $176,500. Plaintiff alleges that Mr. Bouchard cannot satisfy Plaintiff's collateral demand in part because he fraudulently transferred the Vermont Property.

Plaintiff has incurred expenses of approximately $65,000 on account of the bond in favor of Walsh and anticipates it will incur future expenses and other losses as well. For this reason, Plaintiff requests an order requiring Mr. Bouchard to reimburse Plaintiff for all incurred expenses and, upon demand, reimburse Plaintiff for all future expenses and loss. *Id.* at 11, ¶ 55. Plaintiff also alleges that it is entitled to specific performance by Mr. Bouchard with regard to his obligation to provide collateral security in the amount of $605,128.36 and that, without this collateral, Plaintiff will suffer irreparable harm. *Id.* at 11, ¶¶ 57-58. Plaintiff seeks avoidance of the allegedly fraudulent transfer, an injunction against further disposition by Defendants of the Vermont Property, and appointment of a receiver to take charge of the Vermont Property.

To the extent Defendants allege additional facts in their motion to dismiss and reply, those facts cannot be considered in determining the sufficiency of the Complaint.

4

*See Oxman v. Downs*, 999 F. Supp. 2d 404, 406 (E.D.N.Y. 2014) (holding that "evidence outside of the Complaint may not be considered by the Court when deciding a motion to dismiss").

## II. Conclusions of Law and Analysis.

### A. Whether the Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction and Failure to Join an Indispensable Party.

Defendants assert that this court lacks subject matter jurisdiction to hear Plaintiff's claims because they are unripe and dependent upon contingent future events.[1] "Federal courts may adjudicate only those real and substantial controversies admitting of specific relief . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Auerbach v. Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104, 108 (2d Cir. 1998) (internal quotation marks and alteration omitted). In considering whether a claim is ripe, the court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 104 (2d Cir. 2014) (internal quotation marks omitted). "The fitness analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *N.Y.C.L. Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008) (internal quotation marks and alteration omitted). The hardship prong requires courts to "gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). "Where, as here, a Rule 12(b)(1) motion is . . . based solely on the allegations of the complaint or the

---

[1] Defendants contend for the first time in their reply brief that the court lacks jurisdiction because a Massachusetts court must first adjudicate whether the bond that Bouchard Painting executed in favor of Walsh is "void" under Massachusetts law. (Doc. 23 at 7.) Defendants alternatively argue that this court should stay further proceedings "until declaratory judgment is entered by a court with jurisdiction over the subject matter between and among indispensable non-parties[.]" (Doc. 23 at 1.) Because these issues were raised for the first time in Defendants' reply brief, the court declines to consider them. *See McBride v. Bic Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (noting courts "ordinarily will not consider issues raised for the first time in a reply brief"); *McGarry v. Pallito*, 2013 WL 3338682, at *8 n.11 (D. Vt. July 2, 2013) (finding that "[t]he Second Circuit has made clear that it disfavors new issues being raised in reply papers.").

5

complaint and exhibits attached to it . . . the court must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff." *High Mountain Corp. v. MVP Health Care, Inc.*, 416 F. Supp. 3d 347, 351 (D. Vt. 2019) (internal quotation marks omitted).

Defendants contend that Plaintiff's claims are dependent on the outcome of "the anticipated adjudication of claims between Bouchard Painting and Walsh[,]" (Doc. 19 at 5) because the "underlying issue of liability arises under Massachusetts law governing contracts for public projects in the Commonwealth." (Doc. 23 at 6.) The Second Circuit has held that when a court inquires into the ripeness of claims under an indemnity agreement, the court should "give effect to the intentions of the parties, as manifested in the indemnification agreement viewed in its entirety." *Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 299 (2d Cir. 1989). "[S]ureties draft their indemnity agreements broadly, and with extensive protections, and the courts . . . consistently enforce the agreements and the remedies granted to the sureties." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2010 WL 11627203, at *10 (E.D.N.Y. May 19, 2010) (internal quotation marks and citation omitted).

Under the clear and unambiguous terms of the Indemnity Agreement, both Plaintiff's right to collateral security and indemnification are contingent upon an "Event of Default[,]" rather than upon an adjudication of liability. As a result, in assessing whether Plaintiff's claims are ripe, "the relevant question is not whether [Plaintiff] has actually paid [Walsh] or whether [Plaintiff]'s liability to [Walsh] is established with finality and certainty. Rather, the relevant question" is whether an Event of Default has occurred. *Am. Motorists*, 876 F.2d at 301.

Because the Indemnity Agreement states that an Event of Default includes any "inaccuracy of any representation . . . or other information made or provided by [Mr. Bouchard] in . . . any . . . materials submitted to [Plaintiff] in connection herewith[,]" (Doc. 1-1 at 3) Mr. Bouchard's alleged failure to disclose the Vermont Property and the inaccurate disclosure of the Derry Property plausibly triggered an Event of Default. Plaintiff's receipt of notices of default and demands from Walsh also plausibly triggered

6

an Event of Default under § 4.01(xii) of the Indemnity Agreement (defining an Event of Default as "a declaration of default by an Obligee under any Contract or Bonds"). Bouchard Painting's alleged failure to perform work at the Project plausibly triggered Events of Default under §§ 4.01(ii) and (iv) (defining both "failure, delay or inability of [Mr. Bouchard] to fully perform . . . a Contract or Bonds, whether actual or alleged" and "alleged or actual failure to diligently prosecute the work under any Contract" as Events of Default). "Where a surety bargained for collateral security and . . . failed to receive it, [the surety]'s injury is real and immediate." *Safeco Ins. Co. of Am. v. Hirani/MES, JV*, 480 F. App'x 606, 609 (2d Cir. 2012) (internal quotation marks and citation omitted) (alterations in original). Therefore, Plaintiff's claims are ripe for adjudication and Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

For the same reason, Defendants' Fed. R. Civ. P. 12(b)(7) motion to dismiss for failure to join Bouchard Painting and Walsh as indispensable parties also fails, because it too is predicated upon the incorrect assumption that Plaintiff's right to recover is contingent upon an adjudication of liability between Bouchard Painting and Walsh.[2] "In determining whether an action should be dismissed for nonjoinder, the court . . . must initially determine whether the party should be joined as a 'necessary party' under Rule 19(a)." *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015) (quoting *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir. 1996) (omission in original)). Under Rule 19, a party is necessary if:

    (a)    in that person's absence, the court cannot accord complete relief among existing parties; or

    (b)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        (i)    as a practical matter impair or impede the person's ability to protect the interest; or

        (ii)    leave an existing party subject to a substantial risk of

---

[2] Defendants also argue that "[t]he Complaint also implicates another necessary, indispensable party, the Town of Grafton[,]" but this sentence constitutes the entirety of their argument. (Doc. 19 at 5 n.9.)

>incurring double, multiple, or otherwise inconsistent
>obligations because of the interest.

Fed. R. Civ. P. 19(a).

Because Plaintiff's claims are contingent upon an Event of Default as defined by the Indemnity Agreement, rather than an adjudication of liability between Bouchard Painting and Walsh, relief under the contract can be afforded without the presence of either Walsh or Bouchard Painting. Defendants' argument fails for the further reason that neither Walsh nor Bouchard Painting have claimed an interest relating to this action. For the purposes of Rule 19(a)(2), "it is the absent party that must claim an interest." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (internal quotation marks omitted). Because neither party has claimed an interest, neither is a necessary party to the instant action as defined by Rule 19(a). *See ConnTech*, 102 F.3d at 682 (finding that "[a] nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract") (internal quotation marks omitted). In turn, they are not indispensable under Rule 19. *See Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1994) (holding that "[o]nly necessary persons can be indispensable"). Defendants' motion to dismiss for failure to join an indispensable party is therefore DENIED.

### B. Whether Dismissal for Improper Venue is Warranted Pursuant to Fed. R. Civ. P. 12(b)(3).

Defendants, all of whom are residents of Derry, New Hampshire, seek dismissal pursuant to Fed. R. Civ. P. 12(b)(3), asserting that venue is improper in Vermont because no substantial part of the events giving rise to the claims occurred in this district. In response, Plaintiff contends that the real property at issue is located in Vermont and the allegedly fraudulent transfer occurred and was perfected in Vermont, rendering venue in the District of Vermont proper.

Venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or

8

>   omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"[A]s the Supreme Court explained . . . the purpose of statutorily defined venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (emphasis in original)). "On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *Gater Assets Ltd. v. AO Gazsnabtranzit*, 413 F. Supp. 3d 304, 313 (S.D.N.Y. 2019) (internal quotation marks and citation omitted). "[F]or venue to be proper" based on the "substantial part" prong of § 1391(b), "significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis omitted). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry" which considers whether "material acts or omissions within the forum bear a close nexus to the claims[.]" *Daniel*, 428 F.3d at 432-33. A plaintiff "need not demonstrate that [its] choice of venue is the best forum; [it] need only demonstrate a prima facie case that [its] choice is permissible under the statute." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 464 (D. Vt. 2013) (citation omitted).

Plaintiff alleges that the Vermont Property is located in the District of Vermont and that the alleged fraudulent transfer occurred and was recorded in Vermont. It has further alleged that Mr. Bouchard's failure to report the Vermont Property on his financial records is an Event of Default that triggers Plaintiff's rights under the Indemnity Agreement. Plaintiff has thus established that venue is proper in Vermont because a substantial part of the property that is the subject of the action is situated in this district

9

and a substantial part of the events giving rise to Plaintiff's claims occurred here. Defendants' motion to dismiss the Amended Complaint for improper venue is therefore DENIED.

### C. Whether Plaintiff has Stated a Claim Upon Which Relief can be Granted.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

Plaintiff's fraudulent transfer claims must also satisfy the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) which requires a claimant to "plead the circumstances that allegedly constitute fraud 'with particularity,'" *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014), although "[m]alice, intent, knowledge, and other conditions

10

of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "In essence, Rule 9(b) places two further burdens" on a plaintiff alleging fraud; the "first goes to the pleading of the circumstances of the fraud, [and] the second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Although "mental states may be pleaded 'generally,' [the plaintiff] must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

### 1. Whether Plaintiff Plausibly Pleads a Claim for Indemnity (Count I).

Defendants seek dismissal of Plaintiff's indemnity claim because they contend that Plaintiff has failed to show a right to indemnification absent an adjudication of the claims between Bouchard Painting and Walsh. All rights and obligations arising under the Indemnity Agreement are governed by New York law. (Doc. 1-1 at 7, §20.3). Under New York law, "[a] contract that provides for indemnification will be enforced as long as the intent to assume such a role is sufficiently clear and unambiguous." *Bradley v. Earl B. Feiden, Inc.*, 864 N.E.2d 600, 605 (N.Y. 2007) (internal quotation marks and citation omitted). "It is axiomatic that an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract." *Gibbs-Alfano v. Burton*, 281 F.3d 12, 19 (2d Cir. 2002).

The clear language of the Indemnity Agreement states that "[Mr. Bouchard] . . . shall . . . indemnify, and keep indemnified [Plaintiff] from and against any and all liability" arising from the occurrence of an "Event of Default[.]" (Doc. 1-1 at 2.) This specifically includes the "costs to compromise or settle any claim . . . whether or not alleged[.]" *Id.* The Indemnity Agreement further provides that Mr. Bouchard "shall reimburse [Plaintiff] for any payment by it, related to" an Event of Default. *Id.* Plaintiff has therefore plausibly alleged a right to indemnity for costs incurred as a result of an Event of Default. Defendants' motion to dismiss Plaintiff's indemnity claim (Count I) is therefore DENIED.

11

### 2. Whether Plaintiff Plausibly Pleads a Claim for Specific Performance (Count II).

Similarly, Defendants assert that Plaintiff has failed to plead a right to specific performance absent the adjudication of claims between Walsh and Bouchard Painting. Under New York law, "a plaintiff is entitled to specific performance of contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999). In determining whether there is an adequately alleged remedy at law, a court may consider "the inability of legal damages to compensate plaintiff fully." *Edge Grp. WAICCS LLC v. Sapir Grp. LLC*, 705 F. Supp. 2d 304, 313 (S.D.N.Y. 2010). "A plaintiff may demonstrate lack of an adequate remedy at law by showing that the defendant is effectively judgment-proof." *In re Landash Corp.*, 590 B.R. 797, 802 (Bankr. S.D. Ohio 2018).

Plaintiff has pled the existence of a contract, it has substantially performed its obligations under the contract by issuing surety bonds to Bouchard Painting upon request, and further alleges that it issued a demand for collateral security in the amount of $605,128.36 and that, but for the allegedly fraudulent transfer, Mr. Bouchard would have been able to at least partially satisfy this demand. (Doc. 1-1 at 9, ¶ 44.) The Indemnity Agreement provides that "[u]pon the occurrence of an Event of Default . . . [Plaintiff] may, in its sole discretion . . . take possession of and to secure the benefit of any and all collateral[.]" (Doc. 1-1 at 4.) Thus, under the Indemnity Agreement, Plaintiff's right to collateral security is triggered by an Event of Default, not a finding of liability. "Collateral security is an interim remedy meant to provide protection to a surety guarantor in the face of anticipated exposure" and therefore "[r]efusing to provide security until after liability is litigated would defeat the very purpose of it." *Arch Ins. Co. v. Centerplan Constr. Co.*, 368 F. Supp. 3d 350, 381 (D. Conn. 2019); *see also Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1321 (S.D. Fla.

2008) (holding that "a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages").

Finally, Mr. Bouchard's "obligation to provide the surety with collateral security is subject to enforcement by specific performance because the damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate." *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014) (internal quotation marks and alterations omitted). In other words, the "true injury to [Plaintiff] is not the monetary loss, but the loss of its bargained-for and contractually-[]guaranteed position as a secured creditor of the Defendant[], and this loss cannot be rectified post judgment." *Id.* at 214-15. Because Plaintiff has plausibly pled a claim for specific performance of the collateral security provisions of the Indemnity Agreement, Defendants' motion to dismiss this claim is DENIED.

### 3. Whether Plaintiff Plausibly Pleads a Claim for Fraudulent Transfer.

Defendants argue that Plaintiff has not pled a plausible claim for relief under the VFTA because Plaintiff has not alleged the existence of a "creditor" as required by the VFTA or that Mr. Bouchard transferred the Vermont Property to avoid "some unspecified payment" with the actual intent to defraud a creditor. (Doc. 19 at 7.)

A creditor asserting a fraudulent transfer claim bears "the burden of proving the elements of the claim for relief by a preponderance of the evidence." 9 V.S.A. §§ 2288(c), 2289(c). § 2288 "provides two bases for finding that a transfer is fraudulent – either the debtor effected the transfer with actual intent to defraud a creditor, or the debtor did not receive reasonably equivalent value for the transferred property and the elements of either § 2288(a)(2)(A) or (B) are satisfied. The latter type of fraudulent transfer is generally described as a constructively fraudulent transfer." *In re Montagne*, 417 B.R. 232, 238 (Bankr. D. Vt. 2009) (internal quotation marks omitted).

The VFTA defines a "[c]reditor" as "a person who has a claim[]" and a "[d]ebtor" as "a person who is liable on a claim." 9 V.S.A. §§ 2285(4), (6). A "[c]laim . . . means a right to payment, whether or not the right is reduced to judgment, liquidated,

13

unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* at § 2285(3). Plaintiff has plausibly pled the existence of a "claim" as defined by § 2285 because it has plausibly alleged a right to payment under the Indemnity Agreement. Plaintiff has further plausibly alleged that it is a "creditor" and that Mr. Bouchard is a "debtor" as defined by the VFTA because Plaintiff has a claim against Mr. Bouchard under the Indemnity Agreement.

Pursuant to § 2288(a)(1) of the VFTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor[] . . . if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]" 9 V.S.A. § 2288(a)(1). "The determination of a defendant's fraudulent intent is a fact-intensive inquiry and is nearly always proven from surrounding circumstances rather than direct evidence." *In re Montagne*, 417 B.R. at 238 (internal quotation marks omitted). In deciding whether there is an "actual intent to hinder, delay or defraud[,]" courts consider the eleven factors listed in § 2288(b), referred to as the "badges of fraud." *Id.* at 237-38 (internal quotation marks omitted).[3] "When these badges of fraud are present in sufficient number, it may give rise to an inference or presumption of fraud." *Id.* at 238 (internal quotation marks omitted).

Plaintiff alleges that Mr. Bouchard transferred the Vermont Property to his

---

[3] The "badges of fraud" include:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

9 V.S.A. §§ 2288(b)(1)-(11).

14

daughters for nominal consideration (Doc. 1 at 8-9, ¶¶ 38-43) just two days after Mr. Bouchard was made aware of the Walsh claim. *Id.* at 7, ¶ 32. Plaintiff further alleges that Mr. Bouchard concealed the existence of the Vermont Property on his financial statements and misrepresented the nature of the transfer by claiming the Vermont Property had been sold to an LLC. *Id.* at 8, ¶ 36. Accepted as true, these allegations are sufficient to allege a § 2288(a)(1) claim against Defendants. Defendants' motion to dismiss Plaintiff's intentional fraudulent transfer claim is therefore DENIED.

Under Vermont law "a constructive fraudulent transfer occurs when a debtor makes a transfer (i) without receiving a reasonably equivalent value in exchange for the transfer, (ii) at a time when (a) the debtor was insolvent or became insolvent as a result of the transfer, or (b) the debtor reasonably should have believed that it would incur debts beyond its ability to pay as they became due." *In re Turner & Cook, Inc.*, 507 B.R. 101, 108-09 (Bankr. D. Vt. 2014); *see also* §§ 2288(a)(2), 2289(a). To decide whether a debtor was paid reasonably equivalent value, courts consider "(i) the market value of what was transferred and received; (ii) whether the transaction took place at arm's length; and (iii) the good faith of the transferee." *In re Turner*, 507 B.R. at 109. "[A] debtor is insolvent if the sum of its debts is greater than the value of all of its assets[.]" *Id.*

In its Complaint, Plaintiff contends that Mr. Bouchard did not receive reasonably equivalent value in exchange for the transfer of the Vermont Property because while the fair market value of the property is allegedly estimated to be $292,000, Mr. Bouchard transferred the property to his daughters for a total of $3.00. Plaintiff further alleges that it forwarded the Walsh claim letter alleging serious defects in Bouchard Painting's work, the cost of which totaled $202,050.58, to Mr. Bouchard on October 17, 2018, two days prior to Mr. Bouchard's transfer of the Vermont Property. Thereafter, Mr. Bouchard allegedly indicated that he was unable to post the requested collateral. (Doc. 1-1 at 9, ¶ 45.) Plaintiff further claims that Mr. Bouchard's net worth after the transfer of the Vermont Property was $176,500. *Id.* at 10, ¶ 50. Accepting these allegations as true, Plaintiff has sufficiently pled a claim for constructive fraudulent transfer under § 2288(a)(2) and § 2289(a). *See Kindred Nursing Ctrs. E., LLC v. Estate of Nyce*, 2017

15

WL 2377876, at *6 (D. Vt. May 31, 2017) (holding that plaintiff sufficiently alleged constructive fraudulent transfer where a mother transferred real property to her sons without "compensation or fair market value" and where defendants "knew or reasonably should have known that [the mother] would incur substantial medical expenses and debt"). Defendants' motion to dismiss Plaintiff's constructive fraudulent transfer claims is therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion to dismiss. (Doc. 19.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of December, 2020.

Christina Reiss, District Judge
United States District Court